The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's case will be called as previously announced. The times are as allotted to counsel. The case today is Robert B. Minturn v. Bruce H. Monrad et al. Appeal number 22-1200. Attorney Garg, please introduce yourself for the record and proceed with your argument. May it please the court, Shikha Garg for defendants' appellants, the trustees of the Northeast Investors Trust. With the court's permission, I'd like to reserve three minutes for rebuttal. You may. Thank you. The district court's interpretation places the trustees in an untenable position. Forever bound to the 1989 agreement, a contract with no termination provision, they must pay Minturn his retirement benefits first and in full, even if there is no money left in the management fee, to pay the trust rent for the month. That is an absurd consequence, and it is precisely the type of absurd consequence Section 11 is meant to address by allowing the trustees to modify trustee compensation when their fiduciary duties require it. The district court's contrary interpretation cannot be the unambiguous meaning of Section 11 because of its illogical results and because it is unsupported by other rules of grammar and contract interpretation. And in any event, the trustees' interpretation is at least one possible and reasonable interpretation, and so the district court erred by failing to consider extrinsic evidence. First, the district court's interpretation cannot be the unambiguous meaning of Section 11. Massachusetts law requires interpreting an agreement as a rational business instrument and to avoid absurd consequences. Placed in context, the trustees, when signing the 1989 agreement, did so in the background of the Declaration of Trust and their fiduciary duties. Those fiduciary duties, then, must play a role in interpreting the 1989 agreement. And the text of Section 11 includes language noting that the trustees understood they had fiduciary duties and wanted to incorporate them into the agreement by referring to the best interests of the shareholders. What do you say about the use in Article 11 of words such as contemplate and intend which typically indicate that a clause or a provision is precatory? Those words can indicate the precatory nature, depending on the clause. What do you say can indicate? Have you got any case law where a word like contemplate has been found to indicate mandatory as opposed to precatory? The word intended, yes, Your Honor. Have I asked you about the word contemplate? Not in this context, no, Your Honor. Okay. Isn't there a problem with the fact that it uses contemplate and intend? Contemplate is usually precatory. Intend is very often taken not to mean precatory. And you cite some cases from Massachusetts in which intend is read against not to mean a precatory language. That's correct, Your Honor. And so both of those words should be given meaning. And in this case, by using the word intend, that does point in the direction that the trustees intended Section 11 to be binding. Pardon me, but I think you've got a real problem with is it Section 9 that talks about the two things. When the trust gets itself into a situation of declining income coming in and then gives the trustees explicit authority under certain conditions to revise retirement benefits. Yes, thank you, Judge Selya. How can we interpret Section 11 independently of that section? Section 8 is a particular section that lays out particular circumstances in which compensation for two of the trustees, Ernest Monrad and William Oates, could be modified. But those preconditions weren't met here, so Section 8 isn't a more specific provision that applies. Pardon, counsel, but I think that's irrelevant. We have to look at how 11 is to be understood against Article 8, which provides for a power to adjust retirement benefits. But also limits it. And you seem to say Section 11 nonetheless gives independent power totally apart from Section 8. Section 11 is not totally apart from Section 8. Section 11 is a broader principle of invoking the trustees' fiduciary duties, and Section 8 represents a decision the 1989 trustees made in those circumstances would be in the best interest of the shareholders. So they're not contradictory unless— I don't understand how you can have a clause in a contract that is specifically limited, and then you interpret a later clause as removing all of those limits. That's not quite the trustees' interpretation. Section 8 still places limits when its preconditions are met. So if the preconditions were met, the trustees could not, pursuant to Section 11, make alterations different from those specified in Section 8. Why is that? That would be a case where the specific provision controls over a more general, since the situation would be within the ambit of both provisions. But short of that— Would that be true in the case—I'm just trying to think about what's specific and what's general if we use the word survive. So in the case of a contract surviving, which is general and which is specific? Section 11 does have a broader ambit. Well, it's broader, but it also would be narrower when it's applying to survive, because Section 8 doesn't seem to be dealing with that question, right? That's correct. The only provision possibly in this contract dealing with termination is Section 11. So why doesn't that make it more specific than 8? In the case of the survival, it would be—Section 11 would be the more specific provision. But should the preconditions in Section 8 be met, then the trustee's language in Section 8 would have to be given meaning in that case. But here, those are questions that aren't quite implicated by Mintoren's return. Am I right that if we read contemplated and intended to be preparatory, are you agreeing that that's the end of the matter? No, Your Honor, because our interpretation is that the contemplation and intention—the Subject 2 clause still has to be given some meaning to the trustee's intent that the agreement shall survive. So even if some of that language is read to be preparatory, the trustees must have intended something by this provision. Five minutes remaining. Five minutes. That's why I guess I'm not—could you just spell out how you would read the text in which it is contemplated and intended as preparatory, but nonetheless this whole provision of 11 still has some binding effect? In that case, Your Honor, our argument is that the Subject 2 clause, what it modifies is not the trustee's contemplation and intention, but the survival of the agreement itself, since that's the only—it's the closest words that are capable of modification. And even if those words are preparatory, the trustees still have background fiduciary duties, which must be read in context with the agreement itself. So your reading on this view, then, is just explain to me what's the function of that preparatory language? You just think it's complete redundancy? It's possibly an artful drafting, Your Honor. Judge Gorton wasn't wrong when he said this was not a particularly well-drafted contract, but that language still has to have some meaning in order not to render it totally superfluous. And so our meaning to that language is that the trustees were acknowledging that they had constraints due to their fiduciary responsibilities that limited their ability to enter into the 1989 agreement. Because those background duties must play a role, to accept the district court's interpretation requires accepting that the trustees intended to abrogate their fiduciary responsibilities and bind themselves to forever paying MNTERN and other retirees. I'm just trying to figure out the grammar on your reading. The idea is that you could effectively delete, it is contemplated and intended, all the way up to the word this. Is that the idea? So it would be subject always to the best interests of the shareholders, this agreement, and the provisions hereof. That's how you read it, right? Yes, that's how we read it with the introductory language reiterating what the trustees intended to do when they inserted that language. Isn't that just a way of saying it's not precatory? It's saying, Your Honor, that even if some of that language is precatory, because the contract includes that clause altogether, there has to be some purpose to it. And to the extent that it's not clear because there's conflicting signs in Section 11 about what's precatory and what's not precatory, that's a case for ambiguity and a reason why the extrinsic evidence here would be particularly useful, given that there is a mix of language in Section 11 and elsewhere in the contract that doesn't quite spell out clearly what the trustees intended, whether Section 8 applies to MNTERN at all, and the use of language like contemplate in Section 11, which may otherwise indicate the precatory nature of a contract provision. And, Your Honor, just going back briefly to the implications of the district court's interpretation, the district court read out the fiduciary duties completely by saying that those would create a situation where the trustees would have absolute discretion to on a whim alter the retirement benefits. But that's not quite what the trustees' interpretation would do. It provides a limited ability for the trustees in only cases where their fiduciary duties command them to change retirement payments or else the trust can't pay for investment services, it can't pay for rent, it can't pay for other necessary expenses that serve the best interests of the shareholders. That is what this language is intended to evoke by referring to the subject to the best interests of the shareholders and to the extent that the means by which the trustees' language doesn't quite clarify the scope of their intent. Can I just ask you, wouldn't it be helpful to you, potentially, if that precatory language was precatory? Your Honor, I'm not quite sure I see how interpreting Section 11 as precatory assists the trustees. Even without Section 11, there are still fiduciary duties that the trustees have, so those would still play a role in interpreting Section 1 through 10, even if Section 11 didn't exist or had no meaning. But the inclusion of Section 11 just provides a little bit of additional clarity that the 1989 trustees knew they had fiduciary duties and intended that they are… What's the state of the world as you see it if Section 11 didn't exist? If Section 11 didn't exist, the trustees would still argue they have discretion only in the case where their fiduciary duties would be violated by making payments, but it would be, frankly, far less clear than it is right now. That's time. What would happen in the case, in other words? You just don't have a position as to whether you could restrict retirement benefits to the plaintiff here based on the trust running out of money? To briefly answer that, our position is that trustees still could, even if Section 11 wasn't there, but Section 11 provides additional clarity that acting in the interest of their fiduciary duties is not a contractual breach of the 1989 agreement. If I might, I don't understand why this is required to avoid breach of fiduciary duties if he has a binding contract and you've got a number of options. You can close offices, the trustees can accept a reduction in pay, or you could declare bankruptcy and then he gets into line with other people. I do not understand the argument that the fiduciary obligations require this. To briefly answer that in two parts, Your Honor, first, the question of whether or not this was in the best interest of the shareholders is a different question. The district court's interpretation requires accepting that even an action taken indisputably in the interest of the shareholders is still not enough to avoid violating the 1989 agreement. But second, on the facts here, Your Honor, there's simply the other options that this would force the trustees into represent the absurd consequences. If the trustees couldn't afford investment services... Okay, I've got it. Thank you. Thank you. Thank you. At this time, if you could mute your camera and Attorney Salveson, if you could introduce yourself on the record with your camera on to begin. Thank you. Good afternoon. May it please the court, Doug Salveson for the appellee Robert Minter. The gist of the trustees' argument is that Section 11 somehow formalizes the trustees' fiduciary obligation to the company's shareholders so that when the trustee compensation drops due to a reduction in the company's net assets, the trustees then have the contractual ability to terminate or suspend trustee retirement payments. And that argument is made despite there being another contractual provision that expressly restricts their ability to do just that. As the district court concluded, and for the reasons that are set forth in our brief, we contend that the trustees' proposed construction of the 1989 agreement is unreasonable and should be rejected. The arguments in support of that, I've read through the brief again this morning, I think are adequately made in the brief. If there are questions that the panel has for me, I'm happy to answer them, but that's really all I need to say, I think, in the argument. Mr. Salveson, do you take the position that Article 8 applies or could apply to your client, could be applied to your client? I believe it could be, yes. Okay. And did you make that argument to us in your brief? No, I did not, because below, the trustees made the argument that it did not apply. But below, I thought that they would take the position that it did, because there's a reference in Section 8 to Section 6, which is the section that deals with Mr. Minton's retirement payments. And then, is your position, just so I understand it, that the whole of Section, what is your position with respect to the precatory nature of Section 11? I think the entire provision is precatory. It represents the expectation and hope of the trustees that once they were no longer managing the trust. Am I right in reading the district court not to have taken that position? No, I think the district court did agree with us. As I read the opinion, the district court said that it was precatory. You read it to have said that. Then why was it focusing on how much of the thing it traveled to, the subject clause? I just don't understand. Isn't the subject always to the best interest of the shareholders, and what that modifies just an irrelevancy if the whole thing is precatory? I think the court could have stopped, and I think this court could stop at a finding that it is precatory. I can't explain why Judge Gordon went beyond that. We argued beyond that, and I don't know. But he could have stopped at, it's precatory, that's the end of it. If there are no more questions, I'll rest on my brief. Thank you. Thank you, counsel. At this time, you can mute your camera, and Attorney Garg, I think you have a three-minute rebuttal. Thank you. I'll just make two quick points on the two issues that Mr. Salveson discussed. First, on whether Section 8 could apply to MNTERN. The mere fact that it's unclear whether or not Section 8 applies to MNTERN is a reason why, if Section 8 is relevant to this court's decision, there needs to be a remand since it's ambiguous. There is a stray reference to Section 6 made in Section 8, but earlier in Section 8, it names two trustees by name, neither MNTERN, and it refers to other sections other than MNTERN's section. So, there's no clarity to be found in Section 8 about its applicability to MNTERN at all. But, again, it's irrelevant whether or not Section 8 applies to MNTERN since it indisputably did not apply at the time the votes were taken in 2018 and 2019 because of the trust financial state at the time. So, this court need not wade into the ambiguity posed by Section 8 at all. And second, briefly on Mr. Salveson's point that the entirety of Section 11 is precatory, if that were the case, MNTERN's interpretation and the district courts still don't provide an answer to what purpose do the trustees' fiduciary duties serve in conjunction with the 1989 agreement. His only answer is to say that those fiduciary duties don't matter at all, but that's not what the trustees would have understood at the time they signed this agreement and the way contract interpretation requires understanding the intent of the drafters. The trustees had fiduciary duties, understood they had them, and they must play some role in the interpretation of the 1989 agreement whether or not Section 11 exists at all. And just again, Section 11 provides the additional clarity that those fiduciary duties do not cause a contractual breach of the 1989 agreement when the trustees act subject to the best interests of the shareholders. Ms. Gard, you give considerable velocity to the trustees' fiduciary duty, and when you say that the fiduciary duty permits them to abrogate the 1989 trustee retirement agreement, would that be treated differently than any other agreement? It seems to me that argument may prove too much because it's not really an argument that their fiduciary duties would allow them to abrogate any contract the trust had entered into. Not any contract, Your Honor, but it is true that the fiduciary... How do we draw the line? What's the distinction? The distinction would be about what is in the best interest of the shareholders, Your Honor. But it may be in the best interest of the shareholders to abrogate a contract for the purchase of 50,000 shares of a startup. Your Honor, there's a difference between a question of, say, profitability to the trust and viability of the trust. And that, again, goes to the discussion Judge Lynch and I had where there might still be questions about whether or not an action the trustees take is subject to the best interest of the shareholders. But the district court's interpretation, by ruling out any consideration of fiduciary responsibilities, requires the consequence that the trustees can't act in the best interest of the shareholders. Even if we all would agree that stopping the payment in retirement benefits would be in the best interest of the shareholders, their hands are bound. And there is no out to paying Minton everything he believes he's owed under the agreement. That's time. Thank you. Thank you. That concludes argument in this case. The session of the Honorable United States Court of Appeals is now recessed. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.